480 P.2d 677

**RHODES WESTERN, a foreign corporation, Appellant,**

v.

**Madolyn CLARKE, a widow, Appellee.**

**No. 1 CA–CIV 1125.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 18, 1971.

Rehearing Denied March 22, 1971.

Review Denied April 6, 1971.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Harry J. Cavanagh, David L. Haga, Jr., and James A. Teilborg, Phoenix, for appellant.

Charles Christakis, Phoenix, for appellee.

STEVENS, Presiding Judge.

The plaintiff, Madolyn Clarke, secured a default judgment against Rhodes Western, one of two defendants in a tort action. Rhodes Western sought to have the trial court vacate both the default judgment and the entry of the default, or in the alternative, to vacate the default judgment. The relief sought in the trial court was denied. On this appeal Rhodes Western seeks the same alternative relief.

In her complaint, the plaintiff joined two defendants, Rhodes Western, a foreign corporation, and Maxim's of Oregon, Inc., a foreign corporation. The latter will be referred to as Maxim's. The plaintiff alleged that the defendants were engaged in the operation of a beauty shop, a shop in which she was a customer and wherein she suffered injuries in the application of a cold wave permanent.

Both defendants had the same statutory agent. The suit was filed on 25 June 1968, and on the same date both defendants were served simultaneously by service upon their statutory agent. The complaint sought general damages in the sum of $10,000 and in addition prayed for special damages.

The answers of the defendants were due on 15 July.

The defaults of both defendants were entered on the 16th. Maxim's, through its attorney, filed an answer on the 18th. With the plaintiff as the only witness, she and her attorney appeared before a Court Commissioner on the 23rd and a judgment in the sum of $7,500 was entered in her favor against Rhodes Western only. On the 24th Rhodes Western, by its attorneys, filed a motion to vacate the default and the default judgment. Thereafter Maxim's filed a motion to vacate the default. The Maxim's motion was granted and the Rhodes Western motion was denied.

The circumstances in relation to the failure to answer were not identical and did not call for the exercise of identical degrees of judicial discretion. We discuss only the Rhodes Western situation.

Walter L. Kimes, an Insurance Supervisor employed by Rhodes Western's insurer, executed an affidavit in support of the Rhodes Western motion. Other evidence was also presented to the trial court.

After a three-stop-circuitous route from Phoenix to San Francisco and to Oakland, the complaint and summons arrived in the Kimes office in Phoenix on 11 July, well within the time to answer the complaint. Kimes stated that Maxim's was "duty bound to defend Rhodes Western." In this connection an abstract of the lease between Rhodes Western as "licensor" and

Maxim's as "licensee" was received in evidence. The lease provision recites, "Licensor shall give prompt notice to Licensee of any claims for damages and Licensee will defend any such suit at its own cost." The record is silent as to any notice given by Rhodes Western to Maxim's.

Kimes further stated that for several days he was unsuccessful in his efforts to reach plaintiff's counsel. Kimes utilized this method in his effort to ascertain the name of Maxim's attorney. He stated that he was successful on 23 July, only to learn of the default and the name of Maxim's counsel. He stated that it was his "normal process" to make diary entries as to litigation but that since Maxim's had always taken care of the interest of Rhodes Western in similar situations he "did not place the date for appearance in the suit diary." Kimes also asserted:

"That Rhodes Western does not conduct any beauty operation or hair dressing operation and did not perform any services to or upon the person of the plaintiff; that Rhodes Western merely leases space to Maxim's of Oregon, Inc."

This assertion was countered by copies of advertisements urging customers to patronize "Rhodes Beauty Salon," and Rhodes Western's advertisements announcing a continuation of "our annual summer sale" of " * * * permanent specials" as well as announcing that Mr. Joseph Samora "has joined the staff of our Beauty Salon." The plaintiff's deposition, taken after the entry of the default judgment, also supports the view that Rhodes Western held itself out as a beauty shop operator.

The record fails to disclose that Kimes contacted counsel on behalf of Rhodes Western until after he was informed by plaintiff's counsel that the default judgment had been entered. The record is silent as to any effort by Kimes to contact Maxim's except through his unsuccessful efforts to contact plaintiff's counsel.

■ It is urged that the Rhodes Western situation was similar to the situation found in C. Meisel Music Company, Inc. v. Perl, 3 Ariz.App. 479, 415 P.2d 575 (1966). In the Meisel Music case the defaulting defendant in a suit for the collection of a debt had no legal obligation to pay and had relied upon the express representation made by his co-defendant that the co-defendant would take care of the matter. We do not agree that the situation in the case at bar is similar to the fact situation in the Meisel Music case. In our opinion the negligence of the Insurance Supervisor was not excusable neglect and was more nearly similar to the situation which this Court reviewed in Wellton-Mohawk Irrigation and Drainage District v. McDonald, 1 Ariz.App. 508, 405 P.2d 299 (1965).

We find no abuse of discretion in the trial court's failure to grant the motion to vacate the default.

■ Rhodes Western urges that even if the entry of the default is sustained, and it asserts that it should not be sustained, the trial court should have and that this Court should now vacate the judgment to the end that proof of damages be again presented in the trial court. This issue was raised in the trial court by a motion for rehearing. It is here noted that Rhodes Western's attorney was careful to secure a ruling on this motion prior to the expiration of the time to appeal from the order which denied the motion to vacate the default and the default judgment. The assertion that new proof of damages should be required is based upon a deposition of the plaintiff taken after the 23 July judgment and upon the absence of the presentation of any medical evidence to the Court Commissioner at the time of the hearing leading up to the entry of the default judgment. Rhodes Western urges the application of Rule 60(c), Rules of Civil Procedure, 16 A.R.S.[1] It is urged that the principles set

1. In part, this Rule states that:
"On motion and upon such terms as are just the court may relieve a party

* * * from a final judgment, * * *
for the following reasons:
* * * * *

forth in the Court of Appeals opinion in the case of Camacho v. Gardner, 6 Ariz. App. 590, 435 P.2d 719 (1967), are consistent with Rule 60(c) and should be applied in the case now under consideration. The Court of Appeals Camacho opinion was vacated by our Supreme Court on review, 104 Ariz. 555, 456 P.2d 925 (1969). In its opinion the Supreme Court found excusable neglect in the failure to answer and found that a meritorious defense had been plead. It further stated:

"Matters such as these must be decided on a case-to-case basis. Under the circumstances here, we are of the opinion that equity requires that we hold the trial court did not abuse its discretion in setting aside the default, and that justice and fair play require that the insurer in behalf of the Gardners be given a chance to try the case on its merits. This is a close question. In such cases equity requires that we lean toward the new trial." 104 Ariz. at 561, 456 P.2d at 931.

It appears to this Court that even though the Supreme Court vacated the Court of Appeals opinion in Camacho, it did not negate the possibility that there might be situations, as urged by Rhodes Western, wherein the entry of the default could stand and the default judgment could be set aside.

We do not agree that the absence of medical evidence is fatal to the proper entry of a default money judgment in a personal injury action. On the motion for rehearing, the trial court reviewed the deposition and expressed the opinion that the damages were not excessive. We have likewise reviewed the deposition and the amount of the recovery does not shock the conscience of this Court. In Camacho it was evident to the Court of Appeals that the award was excessive. In the case of Lawrence v. Burke, 6 Ariz.App. 228, 431 P.2d 302 (1967), it was evident to the trial court that the judgments were excessive

and it was also evident to this Court. Also in Lawrence there were other factors causing this Court to affirm the trial court's action in vacating the default judgment as well as in vacating the default.

The orders declining to vacate the default and declining to vacate the default judgment against Rhodes Western are affirmed.

DONOFRIO, J., and MELVYN T. SHELLEY, Judge of the Superior Court, concur.

(NOTE: The Honorable JAMES DUKE CAMERON, a member of this Department of this Court at the time this cause was argued, requested that he be relieved from the consideration of this cause and The Honorable MELVYN T. SHELLEY, a Judge of the Superior Court, was called to sit in his stead.)

"(5)  *  *  * it is no longer equitable that the judgment should have prospective application; or (6) any other

reason justifying relief from the operation of the judgment.  *  *  *."